IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY V. SKIBA, TRUSTEE | ) |
| Appellant, | ) |
| | ) Civil Action No. 05-151 Erie |
| | ) Bankruptcy No. 04-11311 |
| v. | ) |
| TIMOTHY M. LAHER, *et al.*, | ) |
| Appellees. | ) |

**MEMORANDUM OPINION**

McLAUGHLIN, J.

This is an appeal by Trustee Gary V. Skiba ("Trustee") from the Bankruptcy Court's Order dated April 12, 2005. The underlying proceeding was commenced on May 20, 2004, when debtors Timothy M. Laher and Debra A. Laher filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Pennsylvania. Upon reviewing the debtors' schedules, the Trustee learned that Timothy M. Laher had a retirement account through Appellee Teachers Insurance and Annuity Association-College Retirement Equities Fund ("TIAA-CREF") with a value of $92,847.93. Further documentation indicated that this retirement account constituted a qualified annuity under section 403(b) of the Internal Revenue Code, 26 U.S.C. § 403(b). On September 2, 2004, the Trustee instituted an adversary proceeding and filed a complaint against the debtors and TIAA-CREF to clarify the annuity as property of the state and require turnover. The debtors filed an answer to the complaint denying that the annuities should be turned over. The Bankruptcy Court, by order dated April 12, 2005, ruled that the retirement plan was excluded from the bankruptcy estate on the basis of the court's prior opinion in <u>Skiba v. Gould</u> (<u>In re Gould</u>), 322 B.R. 741 (Bankr. W.D. Pa. 2005). We have appellate jurisdiction over the Bankruptcy Court's final order pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, we reverse the Bankruptcy Court's ruling and remand for further proceedings.

## I. STANDARD OF REVIEW

A district court's appellate review of a bankruptcy court's decision is two-fold. The bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1223 (3rd Cir. 1995). The bankruptcy court's legal conclusions, however, are subject to plenary review. Id. As there are no factual issues in dispute, our review in this instance is plenary.

## II. DISCUSSION

Section 541(c)(1) of the Bankruptcy Code broadly provides that a bankruptcy estate includes "all legal or equitable interests of the debtor in property" as of the commencement of the bankruptcy estate "except as provided in subsections (b) and (c)(2) of this section." 11 U.S.C. §541(c)(1); In re Haney, 316 B.R. 827, 828 (Bankr. E.D.Pa 2004). Subsection (c)(2) provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). The sole issue before us is whether Timothy's TIAA-CREF pension plan falls within the § 541(c)(2) exception.

### A.     The "Trust" Requirement

In Gould, the bankruptcy court noted that "[t]here is a conflict among the courts on the issue of whether annuity pension plans that are tax qualified under the provisions of 26 U.S.C. § 403(b) are excluded from the bankruptcy estate by the provisions of § 541(c)(2)." See In re Gould, 322 B.R. 741, 742 (Bankr. W.D.Pa 2005). The bankruptcy court held that a pension plan does not have to qualify as a "trust" to fall within the parameters of §541(c)(2) and, therefore, the debtors' 403(b) annuity was excluded from the bankruptcy estate. In addition to citing the United States Supreme Court's decision in Patterson v. Shumate, 504 U.S. 753 (1992), the bankruptcy court relied heavily upon the dissenting opinion in In re Adams, 302 B.R. 535, 546 (6th Cir. BAP 2003) (Latta, J., dissenting), and the Seventh Circuit's opinion in Morter v. Farm Credit Services, 937 F.2d 354 (7th Cir. 1991).

The debtors, citing Patterson, urge us to affirm the bankruptcy court's conclusion that any

interest in an employer's pension plan can be excluded from the bankruptcy estate if the plan is subject to an enforceable transfer restriction under applicable nonbankruptcy law. Patterson, 504 U.S. at 758. In Patterson, the United States Supreme Court held that an antialienation provision in an ERISA-qualified pension plan constituted an enforceable restriction on transfer under "applicable nonbankruptcy law." Id. at 757. The Supreme Court framed the issue by stating that "[t]he natural reading of the provision entitles a debtor to exclude from property of the estate any interest *in a plan or trust* that contains a transfer restriction enforceable under any relevant nonbankruptcy law." Id. at 758 (emphasis added). In the wake of Patterson, several courts have seized upon the phrase "in a plan or trust" to hold that a broad range of retirement plans other than "trusts" are excludable from the bankruptcy estate as long as the instrument contains a qualifying transfer restriction provision. See, e.g., Gould, 322 B.R. at 743 (asserting that the Supreme Court's reference in Patterson to "a plan or trust" evinced "the Court's understanding of the intent of Congress expressed both in ERISA and the Bankruptcy Code.").

For example, In re Kelvington, a case relied upon by the debtors, utilized this approach to find that a TIAA-CREF annuity was not property of the bankruptcy estate. Kelvington, 146 B.R. 358 (Bankr. W.D. Pa. 1992). The bankruptcy court based its decision to exclude the plan on the fact that the debtor did not have the right to invade the corpus of the plan and that his access to the contract was restricted by termination, retirement, disability or death. Id. at 360. Similarly, the Seventh Circuit Court of Appeals held that a debtor's TIAA-CREF plan was excluded from his bankruptcy estate because "the strict anti-assignment provision of TIAA-CREF makes it impossible for annuitants to reach the funds in their accounts before retirement." Morter, 937 F.2d at 355. The Court noted that the proper inquiry "is not whether the accumulated funds are in a 'traditional' spendthrift trust, but whether the retirement plan bars the beneficiary and his creditors from reaching the funds." Id. at 358.

The Third Circuit, however, has rejected this broader inquiry, albeit implicitly. In Orr v. Yuhas (In re Yuhas), 104 F.3d 612 (3rd Cir. 1997), the Third Circuit, interpreting Patterson, announced five requirements that must be satisfied before a pension plan can be excluded from the bankruptcy estate. First and foremost, the Court held that "the IRA must constitute a 'trust' within

3

the meaning of 11 U.S.C. § 541(c)(2)," and, secondly, "the funds in the IRA must represent the debtor's 'beneficial interest' in that trust. . ." Id. at 614. Following Yuhas, courts within this circuit have strictly required the existence of a trust in order to satisfy the statutory exclusion. See, e.g., In re Williams, 290 B.R. 83, (Bankr. E.D. Pa. 2003) (holding that the debtor's IRA was not excluded because it was not a "trust" within the meaning of § 541(c)(2)); Pineo v. Fulton (In re Fulton), 240 B.R. 854 (Bankr. W.D. Pa. 1999) (concluding that IRA annuities are not excluded under § 541(c)(2)).

Nor is this trend confined to the Third Circuit. In In re Adams, 302 B.R. 535 (6th Cir. BAP 2003), the Sixth Circuit Court of Appeals rejected the notion that any pension plan with "an enforceable transfer restriction . . . designed to function in a manner 'analogous' to a spendthrift trust" could be excluded from the bankruptcy estate, holding instead that "only an interest in a trust can be the subject of an enforceable transfer restriction within the meaning of 11 U.S.C. § 541(c)(2)." Adams, 302 B.R. at 539. The Court further opined:

> The dissent would like us to amend § 541(c)(2) so as to read: "A restriction on the transfer of a beneficial interest of the debtor in a trust or ERISA-qualified pension plan that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." We believe that if there are to be any changes in the language of § 541(c)(2) such changes must be made by Congress, not by the courts.

Id. at 546. The Sixth Circuit then concluded that an annuity was not a "trust" within the meaning of the statutory exclusion because "[t]he purchase of an annuity ordinarily creates the relationship of debtor/creditor, not trustee/beneficiary." Id. at 541; see also In re Wendt, 320 B.R. 904 (Bankr. D. Minn. 2005) (holding that a debtor's interest in a § 403(b) annuity was not excluded because it did not constitute a trust); In re Quinn, 299 B.R. 450 (Bankr. W.D. Mich. 2003) (finding "nothing within Section 541(c)(2) . . . which would support the broader policy considerations which courts frequently have relied upon when called to interpret it" and concluding that the debtors interest in a TIAA annuity was not excluded); In re Barnes, 264 B.R. 415, 421 (Bankr. E.D. Mich. 2001) (discussing the "trust" requirement at length and concluding that "§ 541(c)(2) applies only to trust interests.").

In light of Yuhas and the other recent cases strictly construing the plain language of §

4

541(c)(2), we conclude that only a debtor's beneficial interest in a *trust* may be excluded from the bankruptcy estate pursuant to that subsection. As noted in Barnes, the broad, policy-based approach to § 541(c)(2) relied upon in cases such Morter and Kelvington derived from an overly expansive reading of Patterson:

> [Patterson's] holding is straightforward enough: ERISA can constitute a source of the "nonbankruptcy law" to which § 541(c)(2) refers. But in resolving that issue, the Court may have created a new one - namely, whether the statute applies to non-trust interests. The confusion on this latter point is attributable in large part to what is *not* said in [Patterson]. Curiously absent from the Supreme Court's decision is any discussion of § 541(c)(2)'s trust requirement. And on occasion the Court seems unaware of the requirement. At the outset of the opinion, for example, § 541(c)(2) is described as "exclud[ing] from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under 'applicable nonbankruptcy law.'" No mention is made of the statute's limitation to trust interests. A less subtle example is the Court's puzzling assertion that § 541(c)(2) "entitled a debtor to exclude from property of the estate any interest *in a plan or trust* that contains a[n enforceable] transfer restriction." (emphasis added).

Barnes, 264 B.R. at 421. In short, in light of the previously described case law and the clarity of the statutorily described language, we reject the bankruptcy court's conclusion that § 541(c)(2) encompasses pension plans other than "trusts". Id. at 426-30; see also Quinn, 299 B.R. at 457-58 (analyzing the interaction between § 541(c)(1) and § 541(c)(2) and concluding that the purpose and legislative history of the latter fail to support the "broader policy considerations" relied upon by Patterson's progeny).

    **B.**    **The TIAA-CREF Contract**

The debtors raise the alternative argument that, even if the exclusionary provision requires the existence of a trust, they can still prevail because the TIAA-CREF annuity constitutes a trust under New York State law.[1] In Morter, for example, the Seventh Circuit noted that New York state

---

[1] The TIAA-CREF contract, by its own terms, purports to be governed by the laws of the State of New York. (See Brief for Appellees, at 16). This provision of the contract has been consistently upheld. See, e.g., In re Montgomery, 104 B.R. 112, 115 (Bankr. N.D. Iowa1989); Connick v. Teachers Ins. & Annuity Ass'n., 784 F.2d 1018, 1020 n. 1 (9th Cir.1986) ("TIAA/CREF annuities require application of New York Law"); In re Braden, 69 B.R. 93 (Bankr. E.D. Mich.1987) (finding

courts have held that the TIAA-CREF plan has all of the characteristics of a spendthrift trust necessary to allow the plan to be excluded under § 541(c)(2). Morter, 937 F.2d at 358 (citing Matter of Aurora G. v. Harold Aaron G., 414 N.Y.S.2d 632 (1979); Alexandre v. Chase Manhattan Bank, 403 N.Y.S.2d 21 (1978)).  However, none of the state cases cited actually held that a TIAA-CREF annuity constitutes a "trust" under New York law.[2]  See Aurora G., 414 N.Y.S.2d at 635, 637-38; Alexandre, 403 N.Y.S.2d at 23-24.   Rather, those cases merely held that the TIAA-CREF contract contains sufficient spendthrift language to prevent former spouses from invading the pension plan for alimony or child support in a matrimonial dispute.  We have previously determined, Section II (A), *supra*, that the existence of a valid spendthrift clause or anti-alienation language is insufficient to trigger the exemption under the Bankruptcy Code absent the existence of a trust:

> The Bankruptcy Code specifically provides that the debtor's interest in property becomes property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that restricts or conditions transfer of such interest of the debtor. . . ." 11 U.S.C. § 541(c)(1).
>
> \*     \*     \*     \*     \*     \*     \*     \*
>
> that the "applicable nonbankruptcy" law to be interpreted in a case involving TIAA/CREF was the law of the State of New York).

---

[2]  The nature and criteria for a trust in New York has recently been described as follows:
> A trust is a "fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another" (Bogert, The Law of Trusts and Trustees § 1 [2d ed. rev. 1984] ). There are four essential elements of a trust: (1) a designated beneficiary; (2) a designated trustee; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) actual delivery or legal assignment of the property to the trustee, with the intention of passing legal title to such property to the trustee (Brown v. Spohr, 180 N.Y. 201, 209, 73 N.E. 14).

In re Mannara, 785 N.Y.S.2d 274, 275-76 (Sur. Ct. New York Cnty. 2004).

> Thus, the Bankruptcy Code contains a provision that acts as a kind of enzyme within the medium of the Bankruptcy Code: it undoes all anti-alienation clauses except those appurtenant to trusts. 11 U.S.C. § 541(c)(2).

Adams, 302 B.R. at 545.

Several recent decisions support our conclusion that the TIAA-CREF plan or similar plans are not trusts. In Quinn, the bankruptcy court confronted an identical TIAA-CREF pension contract and noted that:

> [N]one of the Debtor's or his employer's contributions to [the TIAA-CREF] plan was placed in a trust for Debtor's benefit. Rather, the contributions were used to pay premiums on an annuity issued by the Teachers Insurance and Annuity Association. It is clear from the face page of the annuity purchased from TIAA that Debtor's interest in the annuity is simply contractual. TIAA itself describes the annuity as a contract and the benefits to be provided to Debtor as being "purchased" from it. Furthermore, TIAA summarizes the obligations to Debtor under the annuity as an agreement "to pay a life annuity to the Annuitant or alternative benefits, in accordance with the provisions of this contract.

Quinn, 299 B.R. at 459. Similarly, the Sixth Circuit has rejected the argument that a 403(b) annuity could constitute a "trust":

> If Mr. Adams's plan contributions are premium payments and he is merely an annuitant, it is difficult to view the plan as a trust. The purchase of an annuity ordinarily creates the relationship of debtor/creditor, not trustee/beneficiary . . ., and "[a] debt is not a trust."

Adams, 302 B.R. at 541 (citing Restatement (Second) of Trusts § 12 (2003)) (additional citations omitted); see also Wendt, 320 B.R. at 909 (concluding that the debtor had failed to meet his burden of demonstrating that a 403(b) annuity was a "trust" within the statutory meaning).

### III. CONCLUSION

For the reasons state above, we conclude that the bankruptcy court failed to correctly apply the appropriate law to the facts of this case. Accordingly, the bankruptcy court's decision is **REVERSED** and this case is **REMANDED** for entry of an order consistent with this opinion.

An appropriate Order follows.

| | |
|---|---|
| GARY V. SKIBA, TRUSTEE )<br>       )<br>    Appellant, )<br>       )<br>       )<br>       )<br>       )<br>    v. )<br>       )<br>TIMOTHY M. LAHER, *et al.*, )<br>       )<br>    Appellees. ) | Civil Action No. 05-151 Erie<br><br>Bankruptcy No. 04-11311 |

## O R D E R

AND NOW, this 5th day of August, 2005, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Bankruptcy Court's Order of April 12, 2005 is REVERSED.

                                                                 /s/ Sean J. McLaughlin
                                                                United States District Judge

cm:  All counsel of record.\_\_\_