PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case No. 05-4168
_____

IN RE: DEBRA A. LAHER; TIMOTHY M. LAHER,
Debtors

GARY V. SKIBA

v.

TIMOTHY M. LAHER;
DEBRA A. LAHER;
TIAA-CREFF

Timothy M. Laher;
Debra A. Laher,

Appellants

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No.05-cv-00151)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
on March 28, 2007

Before:  RENDELL, BARRY, and CHAGARES,
<u>Circuit Judges</u>.

(Filed:  August 2, 2007)

Joseph B. Spero    **[ARGUED]**
3213 West 26th Street
Erie, PA    16506
*Counsel for Appellants*
   *Timothy M. Laher; Debra A. Laher*

Gary V. Skiba    **[ARGUED]**
Yochim, Skiba, Johnson, Cauley & Nash
345 West 6th Street
Erie, PA    16507
*Counsel for Appellee*
   *Gary V. Skiba*

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

This case presents the question of whether Timothy M. Laher's TIAA-CREF retirement annuity is excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). We hold that it is, and will reverse the decision of the District Court and order that the case be remanded to the Bankruptcy Court for entry of an order excluding the annuity from the bankruptcy estate.

FACTUAL AND PROCEDURAL HISTORY

While employed by Gannon University, Timothy Laher participated in a tax-deferred retirement plan. Pre-tax contributions were taken from his paycheck and accumulated into a sum that would be used to purchase a contract that would pay him an annuity over time after retirement.[1]   Salary

_____

[1]"A Tax Deferred Annuity Plan is an employee benefit plan established by your Employer under IRC Section 403(b), under which you may make salary reduction contributions to an annuity contract."  CREF Annuity Certificate, App. 89.  The

contributions and employer contributions were fixed as a percentage of the employee's salary.[2]  Under the plan, 3% of an employee's compensation was withheld from his paychecks, and Gannon contributed an amount equal to 7% of the employee's compensation.  Participation in the plan was mandatory.  *See* Gannon Plan, App. 44 ("An Eligible Employee is required to begin participation in the Plan no later than the Plan Entry Date following the completion of five Years of Service at the Institution or the attainment of age 30, whichever occurs later.").  Under the particular plan chosen by Laher, the pre-tax contributions would be used to pay for premiums on an annuity contract.  The manager for his plan was TIAA-CREF, the Teacher Insurance and Annuity Association – College Retirement Equities Fund.  TIAA-CREF "offer[ed] fixed dollar (guaranteed) annuities through the Teachers Insurance and Annuity Association (TIAA); or several variable investment accounts through the College Retirement Equities Fund

---

terms of the account state that the plan was established "to provide lifetime income benefits for retired employees." App. 62 (Gannon University Defined Contribution Retirement Plan[,] Summary Plan Description).

[2]Skiba states that "[t]here is no dispute that the pensions of Timothy M. Laher are annuities qualified under IRC § 403(b)." Appellee's Br. 4.  The TIAA-CREF form states that a "Funding Vehicle is an annuity contract or custodial account established to provide retirement benefits under IRC Section 403(b)." App. 25.

4

(CREF)." App. 67. Each premium paid for an "Accumulation Unit" in the TIAA or CREF accounts, and the sum of such units would eventually provide the annuity benefits for Laher.[3]

The terms of the Summary Plan Description informed Laher that the "accumulations resulting from your participation in one or more of the investment contracts or accounts offered by the Fund Managers [such as TIAA-CREF] will be the source of your retirement benefits, which can be paid out under a variety of methods available under this Plan." App. 62. "You

---

[3]The Gannon plan includes a "Retirement Transition Benefit," whereby at retirement a participant "may elect to receive up to 10% of his or her Accumulation Accounts in TIAA or CREF in a lump sum prior to their being converted to retirement income." App. 70. However, the CREF Annuity Certificate informs the participant that "You may choose to withdraw, as a Lump-sum Benefit, all or part of your Accumulation before starting to receive a lifetime income. Federal tax law may restrict distributions before age 59½, as outlined in Section 47." App. 77. Section 47 ("Restrictions on Elective Deferrals") states: "This Certificate is designed to be a part of a tax-deferred group annuity contract as specified under IRC Section 403(b)." It prohibits distribution of certain portions of the participant's Accumulation "until the participant: (1) attains age 59½; (2) separates from service of the employer under whose plan the aforementioned portion is attributable; (3) dies; (4) becomes disabled within the meaning of IRC Section 72(m)(7); or (5) encounters financial hardship within the meaning of IRC Section 403(b)."

can begin to receive Plan benefits only after you have retired or terminated employment with the University." App. 70. The CREF and TIAA certificates explained how the money would be managed, and each stated that the benefits would be protected from the claims of creditors to the "fullest extent permissible by law." CREF Certificate, App. 100; TIAA Certificate, App. 132. Both stated that they were governed by New York law.

On May 20, 2004, Laher and his wife Deborah ("Debtors") filed a Chapter 7 bankruptcy petition in the Western District of Pennsylvania's Bankruptcy Court. On Schedule B of their petition, Debtors listed the retirement account with TIAA-CREF. The account had a value of $92,847.93. Records indicate that roughly $41,000 of that amount was held in a "TIAA Traditional" account, which "guarantees [the] principal and a specified interest rate." App. 20 (Portfolio Summary). The other $51,000 was held in funds listed as "CREF Stock" and "CREF Money Market." *Id.* A pie chart in the summary stated that 29% of Laher's monies was in equities, 45% was guaranteed, and 26% was in a money market account. *Id.*

On September 9, 2004, the Chapter 7 Trustee, Gary Skiba, filed an adversary proceeding alleging that Laher's TIAA-CREF annuity was property of the bankruptcy estate "under either *Patterson v. Shumate*, 504 U.S. 753 (1992), or 11 U.S.C. § 541(c)(2) because it is not a trust." Skiba Compl. 2; App. 18. Section 541 states, in relevant part:

6

The commencement of a case under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303] creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

*(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.*

11 U.S.C. § 541(a) (emphasis added).

Section (c) states:

(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law--

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on

7

the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

*(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.*

11 U.S.C. § 541(c) (emphasis added).

Skiba argued that the annuity's restriction on creditors' access to the account did not apply to Laher's annuity because the annuity did not qualify as a "trust" under § 541(c)(2). On April 12, 2004, Judge Bentz rejected this argument and ruled that the TIAA-CREF plan was excluded from the bankruptcy estate. In a one-page order, Judge Bentz wrote that "it is ORDERED that, in accordance with the separate Opinion issued this date in the case of In re Gould, Bankruptcy No. 04-11889, Document No. 19 related to Document No. 13, the Complaint is dismissed and the Debtor's retirement plan through TIAA-CREF is excluded from the bankruptcy estate." App. 34.

Judge Bentz's opinion in *In re Gould* explained his reasoning. Similar to the instant case, the case involved a debtor whose pension plan was a "tax sheltered annuity plan qualified under section 403(b) of the Internal Revenue Code, 26 U.S.C. § 403(b)." *Skiba v. Gould (In re Gould)*, 322 B.R. 741, 741 (Bankr. W.D. Pa. 2005). The trustee (Gary Skiba, the same trustee as in the instant case) argued that the "Pension Plan is an annuity by definition and not a trust; that only an interest in a trust can be a subject of an enforceable transfer restriction within the meaning of 11 U.S.C. § 541(c)(2); and therefore, the Debtor's Pension Plan cannot be excluded from the bankruptcy estate." *Id.* at 742.[4]

Judge Bentz began by citing § 541(c)(2), *id.* at 742, and then took issue with the decision of the Bankruptcy Appellate Panel in the case of *In re Adams*, 302 B.R. 535 (B.A.P. 6th Cir.

---

[4] *See* BLACK'S LAW DICTIONARY 1508 (6th ed. 1990) (defining "Trust" as a "legal entity created by a grantor for the benefit of designated beneficiaries under the laws of the state and the valid trust instrument"); *see also* RESTATEMENT (THIRD) OF TRUSTS § 2 (2003) ("A trust, as the term is used in this Restatement when not qualified by the word 'resulting' or 'constructive,' is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee.").

9

2003), noting that he agreed with the dissenting opinion in that case.   Specifically, Judge Bentz believed that the *Adams* majority erroneously "read[] the statute literally to require a trust." *Id.* Judge Bentz held that a literal trust was not required, but, rather, a plan which functioned like a trust would satisfy the "trust" requirement, relying on the following language of Judge Latta's dissent in *Adams*:

> I find no functional distinction between the protections afforded to beneficiaries of ERISA-qualified pension plans in which assets are held in trust and those in which assets are used to purchase annuity contracts. Outside of bankruptcy, no creditor of the Adams would be able to reach the debtors' beneficial interests in their pension plans to satisfy claims, and this is true not because these interests are exempt from execution pursuant to state law, but because they are exempt from execution pursuant to federal law.

*Id.* (quoting *In re Adams*, 302 B.R. 535, 547 (B.A.P. 6th Cir. 2003) (Latta, J., dissenting)).

Judge Bentz agreed:

> [My] view is aligned with the view of the dissenting Opinion in Adams. [I] see no reason to

10

treat a corporate pension plan differently than a
403(b) annuity pension plan. Both are set up by
a third party, utilize the tax vehicles provided by
the Internal Revenue Code to accumulate funds
on a tax-free basis and contain anti-alienation
clauses to prevent creditors from reaching a
debtor's interests in the plan. [I] further conclude
that this broader view of § 541(c)(2) is supported
by the Congressional goal of protecting pension
benefits.

The anti-alienation clause set forth in Debtor's
Pension Plan sufficiently restricts Debtor's use of
funds such that outside of bankruptcy, no creditor
would be able to reach Debtor's interests, and
therefore, the Pension Plan must be excluded from
the bankruptcy estate by the provisions of
§ 541(c)(2).

*Id.* at 744 (citation omitted).

The trustee appealed and on August 5, 2005, the District
Court for the Western District of Pennsylvania reversed the
decision of the Bankruptcy Court. The District Court first stated
that the "lone issue before us is whether [the] TIAA-CREF
pension plan falls within the § 541(c)(2) exception." *Skiba v.
Gould*, 337 B.R. 71, 72-73 (W.D. Pa. 2005). It stated that the
"debtors, citing *Patterson* [*v. Shumate*, 504 U.S. 753 (1992)],

11

urge [me] to affirm the bankruptcy court's conclusion that any interest in an employer's pension plan can be excluded from the bankruptcy estate if the plan is subject to an enforceable transfer restriction under applicable nonbankruptcy law." *Id.* at 73. It noted that "[i]n the wake of *Patterson*, several courts have . . . [held] that a broad range of retirement plans other than 'trusts' are excludable from the bankruptcy estate as long as the instrument contains a qualifying transfer restriction provision." *Id.*

In the District Court's view, however, such an approach was incorrect: "The Third Circuit . . . has since rejected this broader inquiry, albeit implicitly. In *Orr v. Yuhas (In re Yuhas)*, 104 F.3d 612 (3rd Cir. 1997), the Third Circuit, interpreting *Patterson*, announced five requirements that must be satisfied before a pension plan can be excluded from the bankruptcy estate." *Id.* The first was that "the IRA must constitute a 'trust' within the meaning of 11 U.S.C. § 541(c)(2)." *In re Yuhas*, 104 F.3d at 614. Accordingly, the District Court concluded that "only a debtor's beneficial interest in a *trust* may be excluded from the bankruptcy estate pursuant to that subsection." *Skiba v. Gould*, 337 B.R. at 74. "In short, in light of the previously described case law and the clarity of the statutorily described language, we reject the bankruptcy court's conclusion that § 541(c)(2) encompasses pension plans other than 'trusts'." *Id.* at 75. A motion for reconsideration was filed in *Skiba v. Gould*

12

but it was denied.  Debtors timely appealed.[5]

At the same time as the District Court was rendering its decision, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. 109-8, 119 Stat 23 (2005), was passed.  The Act made certain changes to how tax-deferred annuities are treated with respect to the bankruptcy estate.  While § 541(c)(2) itself was not amended, a new section, § 541(b)(7), was added.  That section stated, in relevant part, that "property of the estate does not include":

(7) any amount--

(A) *withheld by an employer from the wages of employees for payment as contributions--*

(i) to--

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 [29 USCS §§ 1001 et seq.] or under an employee benefit plan which

---

[5]After its order was reversed by the District Court, the Bankruptcy Court apparently began to stay resolution of those cases before it that involved the issue of § 403(b) annuities and will continue to do so until this case is decided.  Appellee's Br. 2.

13

is a governmental plan under section 414(d) of the Internal Revenue Code of 1986 [26 USCS § 414(d)];

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986 [26 USCS § 457]; or

(III) *a tax-deferred annuity under section 403(b)* of the Internal Revenue Code of 1986 [26 USCS § 403(b)]; except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2) [11 USCS § 1325(b)(2)]; or

(ii) to a health insurance plan regulated by State law whether or not subject to such title; or

(B) *received by an employer from employees for payment as contributions--*

(i) to--

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 [29 USCS §§ 1001 et seq.] or under an employee benefit plan which is a governmental plan under section 414(d) of the

14

Internal Revenue Code of 1986 [26 USCS § 414(d)];

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986 [26 USCS § 457]; or

(III) *a tax-deferred annuity under section 403(b)* of the Internal Revenue Code of 1986 [26 USCS § 403(b)];

except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2) [11 USCS § 1325(b)(2)]; or

(ii) to a health insurance plan regulated by State law whether or not subject to such title;

11 U.S.C. § 541(b)(7) (emphasis added).

Collier on Bankruptcy notes that "[u]nder prior law . . . the question of whether a debtor's interest in funds held in a pension plan was frequently litigated as an issue arising under section 541(c)(2), the section which excludes from 'property of the estate' funds held in trusts where under applicable nonbankruptcy law the debtor's interest was inalienable." 5-541 COLLIER ON BANKRUPTCY-15TH EDITION REV. P 541.22C

(footnotes omitted).  Collier's notes that the 2005 amendments "probably will eliminate much of the need for litigation about some portions of the funds held in pension and other welfare-benefit plans, i.e., amounts withheld from wages by employers for, and amounts received by employers from employees for payment as, contributions to, enumerated types of employee-benefit plans."  *Id.* (footnotes omitted).

DISCUSSION

Debtors argue that the TIAA-CREF annuity is treated as an express trust under New York law and should be excluded from the bankruptcy estate.  They cite the TIAA-CREF contract,[6] New York state law,[7] and various court cases.[8]  They

---

[6] *E.g.*, App. 79 ("The validity and effect of all right and duties under the Contract are governed by the laws . . . in force [in New York].").

[7] *E.g.*, Appellants' Br. 23 ("Under New York law, a trust requires four elements: (1) a designated beneficiary; (2) a designated Trustee, not the beneficiary; (3) a fund or other identifiable property; and (4) the actual delivery of the fund or other property to the Trustee with the intention of passing legal title to the Trustee.") (citing *Matter of Mannara*, 785 N.Y.S.2d 274 (N.Y. Sur. Ct. 2004)).

[8] *E.g., Morter v. Farm Credit Servs.*, 937 F.2d 354, 358 (7th Cir. 1991) ("TIAA plan would be enforceable as a spendthrift trust under state law because, in New York, all express trusts are

16

argue in the alternative that even if their annuity is not a trust, that § 541(c)(2) applies to accounts tantamount to, or analogous to, trusts.

Debtors argue that the District Court applied an unduly restrictive reading of *Patterson* and the word "trust." They urge that Supreme Court has given a "natural reading" to § 541(c)(2) in *Patterson* (wherein the Court had referred to a "plan or trust"), and that courts should interpret § 541(c)(2) to further Congress's policy of protecting retirement plans with enforceable transfer restrictions. Specifically, Debtors argue that the "Supreme Court in <u>Patterson</u> placed greater emphasis upon spendthrift trusts' attributes, *i.e.*, anti-alienation/assignability, rather than traditional trust concepts of equitable and legal title, settlor, beneficiary, trustee, and so forth." Appellants' Br. 19.

Debtors also argue that the aims of 26 U.S.C. § 401(a) and § 403 are aligned such that it does not make sense to refuse to treat annuities as trusts: "[Section] 403(b) annuities are not subject to the trust requirements of § 401(a), nor does § 401(f) require their treatment as qualified trusts; but the transfer restrictions imposed on such annuities by § 401(g) reach the same result . . . ." Appellants' Br. 20.

────────────────

presumed to be spendthrift unless the settlor expressly provides otherwise.").

17

They also argue that affirming the District Court would "jeopardize the thousands of TIAA-CREF annuities that are not before this Honorable Court whose recipients depend on same for their retirement." Appellants' Br. 8.[9]

In response, Skiba contends that § 541(c)(2) requires a "trust" and that the annuity at issue is not a trust: "An annuity creates the relationship of debtor to creditor where certain property is owed under an annuity contract under certain terms and conditions and later times; it is not a trust and cannot meet the requirement for exclusion under section 541(c)(2).   This court's decision in [*In re Yuhas*] leaves no doubt that a trust is required." Appellee's Br. 6.

Both sides argue that the addition of paragraph (b)(7) to § 541 bolsters their position.  Skiba asks rhetorically, "Why would [C]ongress add this provision if exclusion were already mandated by section § 541(c)(2), which was not changed?" Appellee's Br. 13, n.1.  Debtors, on the other hand, urge that it was not Congress's intent to change the law but to "make § 541(c)(2) harmonious with what it had originally intended and was codifying how the Supreme Court naturally read § 541 in

_____

[9]Similarly, Debtors argue that "TIAA-CREF annuities are proper funding vehicles for tax advantaged retirement plans, and similar policy reasons that support treating annuity contracts issued under [§ 401(a)] plans also support the same treatment for annuity contracts under [§ 403(b)] plans." Appellants' Br. 21.

[*Patterson*].” Appellants' Reply Br. 6-7. It is further argued that the "additional section was added to eliminate the ambiguity in the code section as was previously written." Appellants' Reply Br. 7. (The parties agree that the new provisions do not apply retroactively to cover the instant case).

Thus, this case presents a question of statutory interpretation,[10] namely, the meaning of the term "trust," in § 541(c)(2) of the Bankruptcy Code. As this term is not defined in the Code, and its meaning is not plainly discernible from the statutory context, we will examine relevant caselaw and statutory changes in interpreting its meaning.

A.    *Patterson* and *Yuhas*

We first retrace the trajectory of how § 541(c)(2) has been interpreted by the Supreme Court in *Patterson* and by our Court in *Yuhas*.

In *Patterson*, the Supreme Court was faced with an issue involving § 541(c)(2) and specifically addressed the question of

---

[10]Our Court has jurisdiction pursuant to 28 U.S.C. § 1291 and reviews the legal determinations by the District Court *de novo*. *Baroda Hill Inv., Inc. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 136 (3d Cir. 2002) ("Because the District Court sat below as an appellate court, this Court conducts the same review of the Bankruptcy Court's order as did the District Court.").

19

"whether an antialienation provision contained in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under 'applicable nonbankruptcy law,' and whether, accordingly, a debtor may exclude his interest in such a plan from the property of the bankruptcy estate." *Patterson*, 504 U.S. at 755. Patterson had participated in his company's pension plan, a plan which "satisfied all applicable requirements of the Employee Retirement Income Security Act of 1974 (ERISA) and qualified for favorable tax treatment under the Internal Revenue Code. In particular, Article 16.1 of the Plan contained the antialienation provision required for qualification under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1)." *Id.* at 755.

Justice Blackmun, writing for a unanimous court, held that "[t]he natural reading of [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a *plan or trust* that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Id.* at 758 (emphasis added). After concluding that "applicable nonbankruptcy law" was not merely limited to state law, the Court next addressed the issue of whether the antialienation provision contained in the ERISA-qualified Plan met the requirements of § 541(c)(2). It wrote:

> Section 206(d)(1) of ERISA, which states that "each pension plan shall provide that benefits provided under the plan may not be assigned or

20

alienated," 29 U. S. C. § 1056(d)(1), clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust. The coordinate section of the Internal Revenue Code, 26 U. S. C. § 401(a)(13), states as a general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated," and thus contains similar restrictions.

*Id.* at 759.

The Court concluded that the provisions in question satisfied § 541(c)(2) in that the "pension plan complied with these requirements." *Id.* The Court did not discuss whether the pension plan at issue constituted a "trust" under the terms of § 541(c)(2), and seems to have expanded the type of legal instruments protected by § 541(c)(2) by referring to "any interest in a *plan* or trust." *Id.* at 758 (emphasis added).[11]

The Court noted that "[p]etitioner first contends that

---

[11]*In re Barnes*, 264 B.R. 415, 421 (Bankr. E.D. Mich. 2001) (noting that in resolving the issue of whether ERISA is applicable nonbankruptcy law, the Supreme Court in *Patterson* "may have created a new one -- namely, whether the statute applies to non-trust interests").

21

contemporaneous legislative materials demonstrate that
§ 541(c)(2)'s exclusion of property from the bankruptcy estate
should not extend to a debtor's interest in an ERISA-qualified
pension plan." *Id.* at 761.  The Court wrote that in his brief
"petitioner quotes from House and Senate Reports
accompanying the Bankruptcy Reform Act of 1978 that
purportedly reflect 'unmistakable' congressional intent to limit
§ 541(c)(2)'s exclusion to pension plans that qualify under state
law as spendthrift trusts. . . .  These meager excerpts reflect at
best congressional intent to include state spendthrift trust law
within the meaning of 'applicable nonbankruptcy law.'" *Id.* at
761-62.

Thus, *Patterson* does not opine as to the meaning of
"trust," but it does employ language that could be interpreted to
mean that § 541(c)(2) is not limited to literal trusts or trusts
formed explicitly.  "Curiously absent from the Supreme Court's
decision is any discussion of § 541(c)(2)'s trust requirement.
And on occasion the Court seems unaware of the requirement."
*In re Barnes*, 264 B.R. 415, 421 (Bankr. E.D. Mich. 2001).

In *Yuhas* we addressed the applicability of § 541(c)(2) to
an Individual Retirement Account ("IRA") formed under New
Jersey law, and, in deciding the case, we parsed the
requirements of § 541(c)(2) set forth in *Patterson*.  104 F.3d at
612.  As we stated, "[t]he issue in this appeal is whether a New
Jersey statute, N.J.S.A. § 25:2-1(b), that protects a qualified
individual retirement account (IRA) from claims of creditors

22

constitutes a 'restriction on the transfer of a beneficial interest of the debtor in a trust' within the meaning of 11 U.S.C. § 541(c)(2) and thus results in the exclusion of the IRA from a bankruptcy estate." *Id.* at 613. We found that "if the debtor's IRA meets all of the requirements of § 541(c)(2), we must hold that it is completely excluded from the bankruptcy estate." *Id.* at 614.

We stated that the requirements of § 541(c)(2) were: "(1) the IRA must constitute a 'trust' within the meaning of 11 U.S.C. § 541(c)(2); (2) the funds in the IRA must represent the debtor's 'beneficial interest' in that trust; (3) the IRA must be qualified under Section 408 of the Internal Revenue Code; (4) the provision of N.S.J.A. § 25:2-1 stating that property held in a qualifying IRA is 'exempt from all claims of creditors' must be a 'restriction on the transfer' of the IRA funds; and (5) this restriction must be 'enforceable under nonbankruptcy law.'" *Id.*

*Yuhas* turned solely on prong four; the parties conceded that prong one was met and thus while *Yuhas* provides the overall framework for applying § 541(c)(2) it did not address what constituted a trust for purposes of the statute.[12]  Contrary

---

[12]Debtors contend that the fact that the IRA was held to be *excluded* in *Yuhas* means that "it logically follows that the annuity and trust accounts in the TIAA-CREF retirement accounts should also be excluded since IRAs have traditionally been the easiest retirement vehicle through which bankruptcy

to Skiba's position before us in this case, we did not decide in *Yuhas* what satisfied § 541(c)(2)'s "trust" requirement.  In short, neither the Bankruptcy Code nor our applicable federal jurisprudence specifically defines "trust" for the purposes of § 541(c)(2).

The Debtors urge that accordingly we should look to state law–here, New York law.  In discussing prong five of the test in *Yuhas*–whether the New Jersey law at issue was a "restriction . . . enforceable under applicable nonbankruptcy law," § 541(c)(2)–we stated that "[a]pplicable nonbankruptcy law includes both federal law such as ERISA, and state law." *In re Yuhas*, 104 F.3d at 614 n.1 (citation omitted).  Moreover, trusts are by nature created and defined by state law.  *See Barnes*, 264 B.R. at 429-30 ("The Code does not contain a definition of the term 'trust.'  But its traditional and common meaning is neither controversial nor mysterious . . . .").  In light of the inclusion of state law under "applicable nonbankruptcy law" and the fact that trusts are creatures of state law, we look to New York law in this

─────────────────────────

Trustees have been able to access to said accounts. . . . Accordingly, [because] the least protective of retirement accounts found protection in the Court's decision, it follows that other retirement accounts which previously maintained greater protection within the courts should continue said protection." Appellants' Reply Br. 3.  This may be a good argument insofar as it frames the account in question as one subject to stringent restrictions, but it does not help Debtors show why as a textual matter the annuity should be considered a trust.

24

case in determining whether the annuity is a trust.

      B.      A Trust under New York Law

"To create a valid trust under the law of [New York ] State four essential elements must be proved: (1) a designated beneficiary, (2) a designated trustee, who is not the same person as the beneficiary, (3) a clearly identifiable res, and (4) the delivery of the res by the settlor to the trustee with the intent of vesting legal title in the trustee." *Agudas Chasidei Chabad of U.S. v. Gourary*, 833 F.2d 431, 433-34 (2d Cir. 1987). "A trust may be created orally or in writing, and no particular form of words is necessary." *Id.* at 434. With respect to those requirements, Debtors claim:

> (1) Gannon University is the settlor of a trust that funds its basic retirement plan through the purchase of a TIAA-CREF retirement annuity, with its employees, such as the Debtor, the designated beneficiaries; (2) TIAA[-CREF] serves as the trustee by accepting premium payments that it invests within the parameters of the annuity plan; (3) the funds contributed by Gannon University and its employees, including the debtor, are the trust res; and (4) Gannon University delivers the contributions to TIAA-CREF to hold, invest, manage and distribute pursuant to the terms of the annuity contract.

Appellants' Br. 24.

The parties do not cite, and we have not found, a case by a New York court which states explicitly whether an annuity of this kind would be treated as a trust under New York law. Debtors rely on *Alexandre v. Chase Manhattan Bank, N.A.*, 61 A.D.2d 537 (N.Y. App. Div. 1978), a case in which an ex-spouse sought "recovery of the accumulated premiums paid for the purchase of the [TIAA-CREF] annuity contracts, or in the alternative . . . appointment as receiver and to have the annuity immediately paid over to her." *Id.* at 540. Debtors cite *Alexandre* because it held that the monies "paid under the annuity contract are neither conditional nor refundable and the judgment debtor has no 'interest' in them." *Id.* Thus, Debtors imply, the annuitant's interest was a trust because the annuitant had only an equitable interest in the trust estate.

Despite the fact that *Alexandre* (and a subsequent case, *Aurora G. v. Harold G.*, 414 N.Y.S.2d 632 (N.Y. Fam. Court 1979)) did not state explicitly that TIAA-CREF annuities were spendthrift trusts, some courts have referred to those cases and New York's restrictions on TIAA-CREF annuity alienability in holding that TIAA-CREF annuities are trusts for purposes of § 541(c)(2). *See, e.g.*, *In re Montgomery*, 104 B.R. 112, 118 n.8 (Bankr. N.D. Iowa 1989) (*"[Alexandre* and *Aurora G.*] do not appear to actually use the term 'spendthrift trust' anywhere in the opinions. The substance of the decisions, however, leads the Court to conclude that the New York courts considered the

26

TIAA/CREF plans to be spendthrift trusts.").

A variety of other courts have followed this approach. *See, e.g., Morter v. Farm Credit Servs.*, 937 F.2d 354, 357 (7th Cir. 1991) ("[I]n every decision we could find that addressed the very pointed question whether TIAA is a spendthrift trust under New York law, the answer was a resounding 'yes.'")*; In re Reynolds*, 1989 Bankr. LEXIS 2719, at *11-12 (Bankr. W.D. Ark. 1989) ("This Court, as did the New York courts in *Aurora G*. and *Alexandre* and the bankruptcy courts in *Montgomery* and *Braden*, holds that the CREF certificate, because of the language in the New York statute, is a spendthrift trust."); *In re Woodward*, 1988 Bankr. LEXIS 2683, at *7 (Bankr. W.D. Ky. 1988) ("Under New York law, the provisions of the TIAA-CREF documents effectively restrict the debtor/beneficiary's ability to transfer his interest in the accounts and also preclude the beneficiary's creditors from reaching the funds. This Court finds that the contracts are valid spendthrift trusts for purposes of Section 541(c)(2).").

We join these courts in holding that under New York law an employer-mandated retirement plan such as this one constitutes a trust. Gannon has parted with the res, intending that it be held by TIAA-CREF for Laher's benefit. TIAA-CREF has been entrusted with the res, is managing it for Laher's benefit, and Laher will receive the funds upon retirement. The requirements of New York law have been met here and the operation of the account as an annuity does not take the account

out of the definition of a trust or § 541(c)(2).

While Skiba contends that the annuity is best understood not as a trust but as the subject of a debtor-creditor relationship, Appellee's Br. 6, we find that argument unpersuasive. The fact that the relationship between Laher, Gannon, and TIAA-CREF can be cast, in part, as debtor-creditor or as a contractual relationship has no bearing on the trust analysis under New York law. As noted, that analysis looks to the presence of a designated beneficiary, a trustee different from the beneficiary, a clearly identifiable res, and the delivery of the res by the trustor to the trustee with the requisite intent. All of those elements are present here. All trusts can be described as contractual relationships insofar as the obligations of all the parties are set forth in an agreement, and the trustee can be described as a debtor to the beneficiary creditor under a trust. However, describing them as such does not mean they are not trusts. *See* RESTATEMENT (SECOND) OF TRUSTS, § 197 cmt. b ("The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract."). We do not view the framing of the relationship as "debtor-creditor" to be helpful to the inquiry at hand.

Two additional factors inform our interpretation of New York law and § 541(c)(2). The first is that *Patterson* analyzed § 541(c)(2) in a manner that presumed a "natural reading" of § 541(c)(2), not limiting the universe of excluded funds to those explicitly labeled "trusts." New York law looks to the features

28

of the fund and its creation–the existence of a beneficiary, a designated trustee, a clearly identifiable res, and the donative intent–not merely the label affixed to the fund. *See Gourary*, 833 F.2d at 433-34. Similarly, *Patterson*'s emphasis on the nature of the restrictions on the fund reflects a textured interpretation of § 541(c)(2). The inquiry *Patterson* conceives of focuses on the nature of the fund, not the label, and we adhere to that approach.

The second factor which convinces us that the annuity at issue here is excluded from the estate is that the newly enacted legislation referred to above–legislation that does not apply to Laher's case–excludes annuities such as these from the bankruptcy estate.

As noted, the 2005 Bankruptcy Act Amendments did not amend § 541(c)(2) but did add § 541(b)(7) which created protection for annuities. That provision states that the property of the estate does not include "any amount . . . withheld by an employer from the wages of employees for payment as contributions . . . to . . . a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986," as well as "any amount . . . received by an employer from employees for payment as contributions . . . to . . . a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986." § 541(b)(7)(A)-(B). While we acknowledge that reasonable minds could differ as to the inference to be drawn from this amendment, we see no reason why we should hold that the

29

annuity interest held by this debtor is included in his estate, when we know that the very same annuity, held by an annuitant who files after October 17, 2005, is not.

As we find that this is a trust under New York law, we need not reach the question of whether § 541(c)(2) includes trust-like accounts tantamount or analogous to a trust.[13] We note that some courts (including the Bankruptcy Court in the instant case) have held that § 541(c)(2) does not require a trust, but rather simply requires a fund be tantamount to a trust or be encumbered by restrictions analogous to those imposed on a trust. *See, e.g.*, *Morter v. Farm Credit Servs.*, 937 F.2d 354, 357 (7th Cir. 1991) ("Even in cases in which courts have included retirement plans within the bankruptcy estate, there has been a willingness to exclude the plan if it is employer-created and controlled and, therefore, analogous to a spendthrift trust.") (citing cases); *In re Quinn*, 327 B.R. 818, 829 (Bankr. W.D. Mich. 2005) (listing features that render annuity "functionally indistinguishable from a spendthrift trust" and excluding it from the estate under § 541(c)(2)).

---

[13]We also note that some courts have held that the CREF account constitutes a trust but the TIAA account did not. For example, the Court in *Barnes* excluded the CREF account from the bankruptcy estate but not the TIAA account. 264 B.R. at 434. We eschew this approach because it fails to properly focus on the trustor's intent, which was the same for both funding vehicles.

30

Meanwhile, other courts have rejected this approach. *See, e.g., In re Adams*, 302 B.R. 535, 539 (B.A.P. 6th Cir. 2003) ("[O]nly an interest in a trust can be the subject of an enforceable transfer restriction within the meaning of 11 U.S.C. § 541(c)(2)."); *Barnes,* 264 B.R. at 428 (rejecting Morter's "[apparent] proposition that an employee benefit plan need not be a trust at all: So long as the plan has an enforceable transfer restriction and is designed to function in a manner 'analogous' to a spendthrift trust, the debtor's interest therein will be excluded from the bankruptcy estate pursuant to § 541(c)(2).").

The annuity here clearly fits within the concept of "trust" in § 541(c)(2).  We necessarily leave for another day the question of whether the word "trust" as used in § 541(c)(2) may be read in light of *Patterson* to include a category of funds tantamount or analogous to trusts.

CONCLUSION

For the reasons set forth above, we will reverse the order of the District Court.  The case will be remanded to the Bankruptcy Court for entry of an order excluding the annuity from the bankruptcy estate and for proceedings consistent with this Opinion.

31